## SADIE C. COUNCILMAN *vs.* THE TOWSON NATIONAL BANK.

*Practice Act—Filing Cause of Action—When Case Proceeds as Ordinary Action—Inconsistent Instructions—Renewal Promissory Note of Two Parties Alleged Not to Have Been Signed by One—Recovery on Original Indebtedness—Giving Bond in Action on Promissory Note When Same is Not Produced—Opinion as to Handwriting.*

The Practice Act of Baltimore County (Act of 1894, ch. 631), requires the plaintiff to file with his declaration, in order to recover a speedy judgment against the defendant, the bond, promissory note or other writing by which the defendant is indebted. *Held*, that a copy of the promissory note filed with the declaration is not sufficient to entitle the plaintiff to recover under the statute.

When an action is brought under a Practice Act, such as the Act of 1894, ch. 631, providing for the recovery of a speedy judgment by the plaintiff unless the defendant files the affidavit and plea required by the statute, and the defendant does make such defense so as to avoid a judgment by default, then the case proceeds as an ordinary action *ex contractu*, and the claim that the plaintiff can make, or the defense the defendant can rely on, depends upon the pleadings and not, upon their respective affidavits, and in that event the case is no longer governed by the Practice Act, but by the ordinary rules of procedure.

The rule against inconsistent or contradictory prayers should not be given such a latitude as to require this Court to reverse a judgment because a prayer which was improperly granted at the instance of an appellant was in conflict with one which was properly granted for the appellee.

A declaration in *assumpsit* contained the common accounts, and also counts on a promissory note dated March, 1902, alleged to have been executed by the two defendants. One of the defendants denied that she had signed this note and the evidence as to this matter was conflicting. Plaintiff's evidence was that this note was in renewal of one given by both defendants in March, 1901. The Court granted plaintiff's prayer instructing the jury that the plaintiff is entitled to recover if they find. that both of the defendants excuted the note of 1901 for money loaned them which was not repaid, although one of the defendants did sign the note of 1902. Also a prayer by this defendant that the burden is upon the plaintiff to prove that the note of 1902 was signed by that defendant, and if the minds of the jury are left by the evidence in a state of equipoise on that subject, the verdict must be for the defendant. There was a judgment for the plaintiff. *Held*, that the plaintiff's ·prayer related to the recovery under the common counts for the money loaned and the defendant's prayer related to the note of 1902, and the apparent conflict between the two prayers did not mislead the jury to the prejudice of the appellant.

The plaintiff loaned money to A and B, who gave their promissory note therefor; and subsequently plaintiff accepted a renewal note. In an action on this note, and also on the common counts, B alleged that she did not sign the renewal note. *Held*, that even if B did not sign the second note plaintiff is entitled to recover on the original indebtedness under the common counts.

*Held*, further, that evidence that the original note had been surrendered to A and destroyed by him is sufficient to protect B from any possible loss on account of that note, and it was not necessary to instruct the jury as to the effect of the non-production of the original note before authorizing a recovery on the indebtedness evidenced by it.

In a suit on a promissory note which cannot be ·produced at the trial, a bond to protect the defendant against loss is required by Code, Art. 13, sec. 11, to be given before judgment in the case and not before verdict.

A bank cashier, whose business it is to determine whether signatures
are genuine and who has seen, what were admitted to be the genuine
signatures of a party, is a competent witness to compare a disputed sig-
nature of that party with the genuine signatures, and give his opinion
thereon under Code, Art. 35, sec. 7.

Appeal from the Baltimore City Court (WICKES, J.)

· The cause was argued before McSHERRY, C. J., BRISCOE,
PAGE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*William S. Bryan Jr.,* for the appellant.

*William Grason* and *Edward N. Rich,* for the appellee.

· BOYD, J., delivered the opinion of the Court.

The appellee sued the appellant and her husband, James
B. Councilman, in the Circuit Court for Baltimore County, and
the case was subsequently removed to the Baltimore City
Court. The *nar.* contains six common counts and three on
a promissory note dated March 17th, 1902—the latter de-
claring on the note in somewhat different ways and being
numbered 7, 8 and 9. A copy of the note was annexed to
the declaration and the proceeding was intended to be in ac-
cordance with ch. 631 of the Acts of 1894, being what is
known as the Practice Act of Baltimore County. The appel-
lee filed the general issue pleas of never indebted and never
promised and two pleas to the seventh, eighth and ninth
counts, denying that she had signed or executed the note
mentioned, and alleging that her name was written thereon
without her knowledge or authority. Issue was joined on her
pleas and judgment by default was entered against James B.
Councilman, the same day the jury was sworn in the appel-
lant's case. A verdict was rendered against her and from the
judgment entered thereon this appeal was taken.

There are five bills of exception in the record—four present-
ing the rulings of the Court as to the admissibility of evidence
and the fifth containing the prayers. We will first consider
the rulings on the prayers. The testimony was conflicting as

to whether Mrs. Councilman signed the note mentioned in the declaration, she having sworn positively that she did not, and there being evidence tending to support her, while Mr. Councilman testified that she did and there was some evidence sustaining him.    The plaintiff produced testimony to show that the note of March 17th, 1902, was a renewal of one of Mr. and Mrs. Councilman originally given in March, 1901, payable four months after date, and renewed by similar notes every four months.    The Court granted two prayers on the part of the plaintiff, and rejected the first and granted the second offered by the defendant.    The first of the plaintiff we do not understand to be questioned, and the second instructed the jury that if they believed that on or about March 20th, 1901, the plaintiff "loaned the sum of five hundred dollars ($500) on a promissory note, which was signed by both of the defendants, payable four (4) months after its date," and if they found "that no part of the amount so loaned has been paid to the said bank by the defendants, or either of them, but is now due and owing to the said bank, then the plaintiff is entitled to recover the amount so loaned," even if the jury found that the note offered in evidence was not signed by Mrs. Councilman.

1. The appellant contended there was error in granting that prayer for several reasons.    In the first place, it is said that inasmuch as the Act of 1894, ch. 631, requires the plaintiff to "file the bond, bill of exchange, promissory note, or other writings or account by which the defendant is so indebted," the plaintiff cannot recover upon any other claim, not filed with the declaration.    There can be no doubt that a plaintiff is not entitled to recover *under that Act*, unless the cause of action is filed at the time of the bringing of the suit, but this recovery was *not under that Act.*    Section 18F of Art. 3 of the Code of Public Local Laws, as enacted by the Act of 1894, entitles the plaintiff (in a suit where the cause of action is a contract) to a judgment, "to be entered by the Court or clerk thereof on the return day or the first day of the term next succeeding the return day or the term to which the defendant shall have been returned summoned," unless a plea is

filed containing a good defense, and an affidavit is made as therein stated, etc.    But section 18G expressly provides that the plaintiff shall not be entitled to a judgment under the preceding sections, unless the plaintiff does certain things therein required, including the filing of the cause of action as above quoted.    *A copy* of the promissory note was therefore not sufficient to entitle the plaintiff to recover under that statute, and judgment by default could not properly have been entered on that copy, if the defendant had failed to appear at the time fixed by the statute.    The action was brought the 13th of October, 1902, the judgment by default against James B. Councilman was not taken until December 8th, 1905, and the verdict was not rendered against the appellant until the 12th of that month.

2. But irrespective of that, when the defendant does appear and complies with the requirements of the statute, the case is then placed on the trial docket of the Court to await trial in its due and regular order.    2 *Poe*, sec. 419.    It was said of the Baltimore City Practice Act, in *McSherry* v. *Brooks*, 46 Md. 103, that "Where the defendant has appeared and pleaded, and the cause has been brought to trial in regular course, the affidavit filed with the declaration, to entitle the plaintiiff to a judgment by default, as authorized by the Act, in no manner controls the nature and character of the proof that may be offered by the plaintiff in support of his action."    And it was held that if there was any question of the plaintiff's right to recover on the promissory notes declared on in the first five counts of the declaration there could be none as to their right to recover on the notes under the count on an account stated. There a prayer was offered by the defendant to the effect that inasmuch as the plaintiffs brought their suit under the Practice Act, with an affidavit setting forth the causes of action upon which they grounded their suit (the promissory notes offered in evidence), they could not base their suit on a different cause of action from the one sworn to by them, and the jury must exclude from their deliberations all evidence tending to show an account stated, or tending to prove any other cause of ac-

tion except the promissory notes.    This Court held that that prayer was properly rejected.  In *Laubheimer* v. *Naill*, 88 Md. 174, the Court, after quoting from *McSherry* v. *Brooks*, what we have quoted above, said that it was equally applicable to the defendant's affidavit, in respect of the nature and character of proof he may offer in support of his defense, and added: "The affidavits are in no sense part of the pleadings, and as this case is presented, neither plaintiff nor defendant is in any manner to be bound or prejudied by his own affidavit, nor can either avail himself of any benefit of his adversary's affidavit, except in so far as the respective averments of these affidavits may strengthen or weaken the other testimony of the party making the affidavit.    The plaintiff is at liberty to claim anything recoverable under his declaration, and the defendant may avail himself of any defense and any evidence admissible under his plea, 46 Md. 122."    In that case the affidavit of the plaintiff only referred to the annexed promissory note for the sum of $200.00, but at the trial he claimed not only the amount of that note, but $340 on an open account.    See also 2 *Poe*, sec. 421.    There can therefore be no doubt that the plaintiff was not limited in its recovery to the promissory note of March 17th, 1902, referred to in the affidavit filed when the suit was brought, but it could "claim anything recoverable" under its declaration.    This is so because, although the plaintiff is required to comply strictly with the statute in order to get a speedy judgment under its provisions, yet when the defendant appears and does what is required of him to avoid a judgment by default, the case then proceeds as an ordinary action *ex contractu*, and the claim the plaintiff can make, or the defense the defendant can rely on, depends upon the pleadings and not upon their respective affidavits.    In short, the case is then no longer governed by the Practice Act, but by the ordinary rules of procedure in actions *ex coutractu*.    The fact that the suit was originally brought under the Practice Act was therefore no reason for excluding evidence of the original indebtedness offered under the count for money lent.

3.  It is also contended there was error in the rulings of the

lower Court because it granted inconsistent prayers—the plaintiff's second and defendant's second. The latter is "The burden is upon the plaintiff to prove that the note offered in evidence and dated March 17th, 1902, was signed by the defendant (record says *plaintiff*), and if the minds of the jury are left by the evidence in a state of equipoise on that subject, the verdict must be for the defendant." We have stated above the substance of that offered by the plaintiff. The conclusion of the defendant's prayer is undoubtedly very broad and might have been misleading, but it is difficult to understand how the appellant can complain of that, for the jury could not have been misled by it to her prejudice. If the plaintiff's second prayer is in other respects free from error the only danger was that the jury might have been misled by the defendant's second to disregard it. The rule against inconsistent or contradictory prayers should not be given such latitude as to require this Court to reverse a judgment because a prayer, which was improperly granted at the instance of an appellant, was in conflict with one, which was properly granted for the appellee. If the appellee's second prayer was otherwise unobjectionable, why should this judgment be reversed because the Court granted a prayer for the appellant which might have caused the jury to fail to give the appellee such benefit of its prayer as it was entitled to? It might have presented a different question if the plaintiff had lost the case, as it would have been impossible to determine that it had not been injured by the granting of the defendant's prayer, but there is no such difficulty presented by this record, as it is certain the appellant was not injured by any supposed conflict between the two prayers.

But in addition to what we have said, it is evident that defendant's second prayer was supposed by the Court to be intended to apply to the note of March 17th, 1902, alone, and not to a recovery on the common counts for the amount originally loaned. It should have been distinctly so limited, but as we have said, if there was danger of misleading the jury it would have been to the prejudice of the plaintiff, and to the

benefit of the defendant, and hence the latter cannot complain.

4. There can be no doubt that if the note of March 17th, 1902, was not signed by Mrs. Councilman, but was accepted by the bank as a renewal of the one originally given in March, 1901, without any knowledge that she had not signed it, the acceptance of the renewal note did not extinguish the original indebtedness. The uncontradicted evidence in the record is that the money was loaned on March 20th, 1901, on the note of Mr. and Mrs. Councilman, and that it was used for her benefit. When that note fell due there was a renewal for four months which became due November 16th, and that was renewed for four months longer, falling due March 16th, 1902. That was renewed March 17th, owing probably to the fact that March 16th came on Sunday, as it did that year. Although Mrs. Conncilman was a witness, she did not deny that she signed any of the notes, excepting the one of March 17th, 1902, or that the money was originally borrowed for her benefit. As she denied that she signed the last note, and her husband had positively asserted that she did, there could be no reason why the bank should be required to abandon its claim under the note of 1902, and under the pleadings it had the right to recover under whichever claim it sustained to the satisfaction of the jury. In *Gisriel* v. *Burrows*, 72 Md. 366, there were two notes dated March the 1st and four dated March the 4th, 1887, declared on in the original declaration. In the course of the trial, it was shown there were six notes dated March 7th for the same amounts, and the same consideration as those of March 1st and 4th. The Court having announced that it would grant a prayer to the effect that the plaintiff could not recover on those of March 1st and 4th, if the jury found that those of March 7th were given in lieu of them, and were so accepted by the plaintiff, the plaintiff amended by adding counts on the notes of March 7th. This Court said the plaintiff had the right to sue on both sets of notes in the one action, although it could only recover on one set, if it should be ascertained by the evidence that both sets

were given for the same indebtedness.    In *Glenn* v. *Smith*, 2
G. & J. 493, our predecessors announced the well-settled rule
that "The acceptance by a creditor from his debtor of his
promissory note for an antecedent simple contract debt does
not extinguish the original debt, if it remains in the hands of
the creditor unpaid, and he can produce it to be cancelled, or
show it to be lost," and that has frequently been followed
since.    In *Morrison* v. *Welty*, 18 Md. 169, it was held that an
alteration of notes for money loaned could only destroy the
notes as binding obligations, without impairing the right to
recover the original debt.    See also *Matthews* v. *Dare*, 20 Md.
248, and *Owen* v. *Hall*, 70 Md. 97.    In the latter case the
declaration contained the common counts and special counts
on a note.    It was shown that the note sued on had been al-
tered without the consent of Owen, but it was held that re-
covery could be had against him on the original cause of ac-
tion, the renewal note being produced at the trial.    Other
cases might be cited which are applicable to the question be-
fore us, but we do not deem it necessary, for it seems to us
to be beyond all question that under such circumstances as
we have stated, the plaintiff was not driven to an election be-
tween a suit on the original indebtedness and one on the re-
newal note, but as the pleadings were such as made the evi-
dence admissible, it could submit the question to the jury for
its determination in the alternative, as was done by the plain-
tiff's two prayers.

5. Of course it was proper to protect the defendant from
any possible loss or inconvenience by reason of the original
note not being produced.    That note, however, was fully ac-
counted for.    The uncontradicted evidence is that the orig-
inal and all the renewals, except that of March 17th, 1902,
which was produced at the trial, were given to Mr. Council-
man and destroyed by him.    It might well be questioned
whether anything more than proof that they had been surren-
dered to him could have been required, for if a note is shown
to have been surrendered to one of two joint makers, it would
hardly be required of the plaintiff to go further and prove that

such maker had destroyed it.    In *Morgan* v. *Bitzenberger*, 3 Gill, 350, it was held that "where a note of the debtor was taken for a debt, and the creditor afterwards sues him upon the original contract, proof that the note was redelivered to the debtor sufficiently accounts for its absence at the trial."    So in this case, as it was not denied that the note of March, 1901, was signed by both, proof of the surrender of it to one of them might have been sufficient, but the evidence went further and showed that the note and all the renewals, except the last, had been destroyed.    Inasmuch as there was no evidence to the contrary, it is impossible to see how the appellant could have been injured by not requiring the jury to pass on that question.

6. Section 11 of Art. 13, of the Code, which authorizes a suit at law upon promissory notes, etc., which cannot be produced in evidence, requires the absence of such instrument to be sufficiently accounted for in order to allow the introduction of secondary proof of its contents, and that no *judgment* thereupon shall be entered until a good and sufficient bond shall be given, as therein provided.    Bond is not required to be given before verdict, but before judgment, and in this case such bond was given and approved by the Court.    There can therefore be no doubt that the appellant was amply protected from any loss on account of the original note, and we are of the opinion that there was no reversible error in granting the plaintiff's two prayers.

7. It follows from what we have said that there was no error in admitting the evidence referred to in the first exception.    Nor do we think there was in the second exception. As Mr. Councilman had sworn that his wife had signed the note of March 17th, 1902, and her defense was that she had not, it was proper to show by the cashier of the plaintiff, as reflecting upon that question, the dealings between the bank and Mr. and Mrs. Councilman.    Nor do we see any error in permitting the cashier to give his opinion as to the genuineness of the signature of Mrs. Councilman.    It is true that he said he had not taken any instructions as to the peculiarities

of handwriting, but he showed that his experience enabled him to judge of them. He had been in the bank since 1890 and had been cashier since 1893. He not only had seen Mrs. Councilman's signatures, which were admitted by her, but he said his duty was to determine whether signatures to checks, notes, etc., were genuine. He showed himself to be a competent witness to compare the disputed signature with those shown to be genuine as authorized by sec. 7 of Art. 35 of the Code. The judgment will be affirmed.

> *Judgment affirmed, appellant to pay the costs.*

(Decided June 14th, 1906.)